UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-CR-35 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| MIGUEL ACEVEDO. | ) | JUNE 11, 2024 |

<u>MEMORANDUM OF DECISION</u>
<u>RE: DEFENDANT'S MOTION TO SUPPRESS AND MOTION FOR A *FRANKS* HEARING (ECF NOS. 64, 66)</u>

Kari A. Dooley, United States District Judge:

On March 1, 2023, a federal grand jury returned a superseding indictment against Defendant Miguel Acevedo, charging him with three counts of possession with intent to distribute cocaine in violation of Title 21, Unites States Code §§ 841(a)(1) and 841(b)(1)(C). Pending before the Court is Defendant's motion to suppress two vehicles seized from his residence on February 14, 2023 and certain evidence discovered therein. Defendant also seeks a *Franks* hearing with respect to the search and seizure of contents from one of the two vehicles after it was seized on February 14, 2023. The Government opposes both motions. For the reasons that follow, Acevedo's motion to suppress and motion for a *Franks* hearing are DENIED. (ECF No. 64, 66)

**Undisputed Facts and Procedural History**

On February 14, 2023, law enforcement officers executed a search and seizure warrant at Defendant's residence at 54 South Avenue in Meriden, which warrant had been issued by Magistrate Judge Garcia. *See* Gov.'s Mem. in Opp'n ("Gov.'s Opp'n") at 11, ECF No. 69; *In re Search Warrant*, No. 3:23-mj-93 (MEG). Parked in a driveway at the front of the residence were two vehicles: a blue Toyota Sienna minivan and a red Ford F-150 truck. Law enforcement seized

both vehicles as forfeitable property on February 14, 2023.[1] On or about February 21, 2023, the minivan was transported to New Hampshire by the U.S. Marshals Service pending asset forfeiture proceedings. Gov.'s Opp'n at 15.

While the seized minivan was in storage in New Hampshire, law enforcement received information that the minivan had a "trap" often used by narcotics traffickers to conceal narcotics and other contraband and which had not been located during the initial inventory search of the vehicle. On March 7, 2023, Magistrate Judge Johnstone of the District of New Hampshire issued a search warrant for the minivan. *Id.* at 15–16. During the execution of the warrant, law enforcement located said "trap" and seized three bricks of compressed white powder labeled "420," three bricks of compressed white powder labeled "HBO," a small bag containing white powder, wrappings, and a scale containing white residue, a plastic bag containing a white rock-like substance, two bags of white powder, and a .357 caliber Magnum revolver loaded with six cartridges of .357 ammunition. *Id.* at 16. The DEA Northeast Laboratory confirmed that the suspected narcotics seized from the minivan were powder and crack cocaine. *Id.*

Defendant filed the instant motion to suppress and motion for a *Franks* hearing on January 12, 2024. Defendant principally argued that the minivan and the truck should not have been seized because they were outside the scope of the search authorized by the warrant for his residence. As such, the second search of the minivan was tainted by the unlawful seizure on February 14, 2023. Alternatively, if the Court concluded that the vehicles were within the authorized scope of the search warrant for his residence, Defendant argued that the warrant application and affidavit in support of the application for the District of New Hampshire search warrant contained

---

[1] Law enforcement also seized pursuant to a warrant a black Jeep Grand Cherokee from Defendant's business on the same day, also for asset forfeiture purposes. *See* Gov.'s Ex. A, ECF No. 71 at 6–7 ¶¶ 9(b), 12. Although the Jeep is discussed herein, Defendant is not challenging the seizure or subsequent search of this vehicle.

2

misrepresentations and falsehoods that were necessary to the probable cause determination. Defendant therefore sought suppression of the items seized from the minivan on this basis and requested a hearing pursuant to *Franks v. Delaware*, 439 U.S. 154 (1978).

In response, the Government clarified, and Defendant does not challenge, as a factual matter, that the two vehicles were not seized pursuant to the search warrant for Defendant's residence. Rather, law enforcement seized the vehicles as contraband subject to forfeiture because there was probable cause to believe they had been used in connection with Defendant's narcotics trafficking or were procured with proceeds from said trafficking. The Government posited that no search warrant to affect the seizure was required. The Government also asserted that it was not required to obtain a search warrant in the District of New Hampshire to conduct a valid inventory search of an asset seized for forfeiture purposes but did so out of an abundance of caution. In the alternative, the Government argued that even if a warrant was required, there were no omissions or misstatements in the affidavit in support of the warrant; no *Franks* hearing is necessary; even assuming some misstatements, the warrant was otherwise supported by ample probable cause; and in any event, the good faith exception to any Fourth Amendment violation would apply.

Accordingly, the initial issue of whether the seizure of the minivan and the truck was authorized by the search warrant for Defendant's residence need not be decided.

In reply to the Government's opposition, Defendant disagrees that the minivan and the truck could be seized for forfeiture purposes without a warrant and argued that such a seizure still violated his Fourth Amendment rights, relying principally on the case of *United States v. Lasanta*, 978 F.2d 1300 (2d Cir. 1992). Further, he maintains that the subsequent search of the minivan is tainted by this constitutional violation. Alternatively, he reasserts his right to a *Franks* hearing regarding the subsequent search.

3

The Government sought permission to file a sur-reply in light of Defendant raising the *Lasanta* decision for the first time in his reply, which the Court granted. In sur-reply, the Government argues that *Lasanta* was abrogated by the Supreme Court's decision in *White v. Florida*, 526 U.S. 559 (1999), as well as the passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").

Thus, the issue this Court must first decide is whether the warrantless seizure of the two vehicles on February 14, 2023 violated Defendant's Fourth Amendment rights.

**Legal Standard**

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (quoting U.S. Const. amend. IV). "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "In most cases, reasonableness requires a warrant and probable cause." *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). There are exceptions to the warrant requirement, however, and "[o]nce a defendant with a reasonable expectation of privacy in the area searched challenges a warrantless search as unreasonable under the Fourth Amendment, the burden is on the government to demonstrate that the search was within one of the recognized exceptions." *United States v. Peña Ontiveros*, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 Fed. Appx. 441 (2d Cir. 2011).

**Discussion**

*Warrantless Seizure*

The Government asserts that it had probable cause to believe that the minivan and the truck were subject to asset forfeiture as either having been used in furtherance of Defendant's alleged narcotics trafficking or acquired with proceeds from the same. Defendant does not challenge the assertion that there was probable cause to believe that the vehicles were subject to asset forfeiture; he challenges the warrantless seizure of the vehicles, notwithstanding the presence of probable cause, relying on *Lasanta*.

In *Lasanta*, the defendant was arrested pursuant to an arrest warrant. 978 F.3d at 1303. After being placed in custody, law enforcement asked the defendant for his car keys because he possessed a stretch limousine as a professional livery driver, which was parked in the driveway of his home. *Id.* Law enforcement then seized the vehicle pursuant to 21 U.S.C. § 881(a) without obtaining a warrant. *Id.* A subsequent search of the vehicle revealed a canister of cocaine underneath the driver's seat. *Id.*

The Second Circuit held that the seizure violated the defendant's Fourth Amendment rights because Congress, through § 881(a), "cannot authorize by legislation what the [C]onstitution forbids." *Id.* at 1304 (citing *Marbury v. Madison*, 5 U.S. 87 (1803)). The court also held that no other recognized exception to the Fourth Amendment applied, including the plain-view or exigent circumstances doctrine; *id.* at 1305; and reasoned that it was not impractical for law enforcement to obtain a warrant and had no realistic concern that the car, which was parked in a private driveway, "might be removed and any evidence within it destroyed in the time a warrant could be obtained." *Id.* The court then held that the unconstitutional seizure of the limousine rendered "the subsequent inventory search invalid." *Id.* at 1306.

However, in 1999, the Supreme Court decided *Florida v. White*, 526 U.S. 559 (1999). There, law enforcement observed the defendant using his car to deliver cocaine, and thus believed that the car was subject to forfeiture under Florida's contraband forfeiture law. *Id.* at 561. The defendant was thereafter arrested at his job on charges unrelated to the observed drug transactions, and, at the same time, the arresting officers seized the car from the defendant's employer's parking lot without a warrant. *Id.* at 561–62. During a subsequent inventory search, law enforcement located two pieces of crack cocaine in an ashtray. *Id.* at 562. The defendant moved to suppress the evidence obtained during the inventory search, which was denied. *Id.* The Florida Supreme Court reversed, relying on *Lasanta* and other circuit court decisions that addressed similar warrantless seizures in the context of the federal civil forfeiture law. *Id.* at 563.

The Supreme Court reversed and upheld the search because officers had "probable cause to believe that the vehicle *itself* was contraband under Florida law." *Id.* at 565. The Supreme Court reasoned that law enforcement's "need to seize readily movable contraband before it is spirited away . . . is equally weighty when the automobile, as opposed to its contents, is the contraband that the police seek to secure." *Id. See also Carroll v. United States*, 267 U.S. 132, 149 (1925) (federal officers with probable cause to believe that an automobile contains contraband may search the car and seize the contraband without obtaining a warrant). The Supreme Court also found relevant that the vehicle was seized from a public parking lot because "Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public spaces." *White*, 526 U.S. at 565.

Thus, *White*, decided after *Lasanta*, permitted the warrantless seizure, upon probable cause, of a vehicle for forfeiture purposes. The Government argues that *White* abrogated *Lasanta*, a proposition with which Defendant disagrees. The Court agrees with the Government.

The Supreme Court specifically noted that the Florida Supreme Court had relied on the Second Circuit's decision in *Lasanta*, as well as other circuit cases which had held that such warrantless seizures violated the Fourth Amendment. The Supreme Court reversed on that central holding, thus abrogating the holding on which Defendant relies. *See Florida v. White*, 526 U.S. at 563; *see also United States v. Jones*, No. 3:13-cr-2 (MPS), 2021 WL 1154480, at *15 (D. Conn. Mar. 21, 2014) (noting that aspects of *Lasanta* "have been outright overruled" and citing to *White*).

Defendant distinguishes this case from *White* on the basis that the vehicle seized in *White* was parked in a public parking lot, whereas here, the vehicles were parked in Defendant's driveway—private property. The Supreme Court's decision, however, though noting the location of the vehicle, did not turn on the fact that it was on public property. *See Trent v. Wade*, 776 F.3d 368, 385 (5th Cir. 2015) (explaining that although the Supreme Court "in *White* supported its holding by noting that the vehicle was seized from public property, the [Supreme] Court did not say that the seizure was permissible only because the vehicle was located on public property"). The decision was not so narrow as to be confined to the specific factual situation presented. While the Supreme Court permitted such a seizure where the vehicle was located on public property, which necessarily implicates a reduced expectation of privacy, there is little distinction between a public parking lot or street and a private driveway under Fourth Amendment jurisprudence when law enforcement officers are legally on the private property pursuant to valid arrest and search warrants. *See id.* at 386 (holding that the "warrantless seizure in this case also did not involve any invasion of . . . privacy because police were lawfully present on the . . . property as they pursued a suspect who was evading arrest") (citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.3(b) (4th ed. 2004) ("[I]t would appear that the [Supreme] Court is also accepting as controlling in forfeiture cases . . . that this power of

warrantless seizure . . . does not extend to vehicles situated on private premises *to which access is not otherwise available for the seizing officer*.") (emphasis added)). The motion to suppress on this basis is therefore denied.

The Government also relies upon CAFRA, amended in 2000, as further support for their argument that the seizure was permissible. The statute provides in pertinent part that vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances are "subject to forfeiture to the United States and no property rights shall exist in them." 21 U.S.C. § 881(a)(4). Property subject to forfeiture may be seized "without a warrant" so long as "there is probable cause to believe that the property is subject to forfeiture and the seizure is made pursuant to a lawful arrest or search." 18 U.S.C. § 981(b); *see also* 21 U.S.C. § 881(b). Although the Court agrees that Congress cannot legislate away the Fourth Amendment; *Lasanta*, 978 F.3d at 1304; CAFRA does appear to codify the Supreme Court's holding in *White*, and the situation presented here falls squarely within its language. Moreover, the language of the statute makes clear that Congress was mindful of the Fourth Amendment protections generally afforded before a seizure can occur by requiring *both* probable cause and seizure in conjunction with the execution of a warrant. *See* 18 U.S.C. § 981(b)(2). Accordingly, the statute appears to comport with Fourth Amendment protections, not thwart them. *See Carroll*, 267 U.S. at 150–52; *White*, 526 U.S. at 564–65.

The warrantless seizure of the minivan and the truck did not therefore violate the Fourth Amendment. The Court turns to the subsequent search of the minivan in the District of New Hampshire.

*Search of Minivan*[2]

As set forth in *Franks*, a defendant may "challenge the veracity of a sworn statement used by police to procure a search warrant." 438 U.S. at 155. If, after a hearing, "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. . . ." *Id.* at 156.

Ordinarily, when a *Franks* motion is filed, the Court must convene a hearing on the motion if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, *and if the allegedly false statement is necessary to the finding of probable cause. . . .*" *Id.* at 155–56 (emphasis added); *United States v. Thomas*, 788 F.3d 345, 349 n.6 (2d Cir. 2015). If the disputed information is not material or necessary to the ultimate finding of probable cause, however, a *Franks* hearing is unnecessary. *United States v. Osborne*, 739 F. Appx. 11, 16–17 (2d Cir. 2018) (summary order) (affirming denial of *Franks* hearing concerning wiretap and search warrant applications where erroneous information "was neither material nor necessary to an ultimate finding of probable cause"); *United States v. Aguiar*, 737 F.3d 251, 263 (2d Cir. 2013) (same; pen register and trap and trace warrant).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

---

[2] The Court does not reach whether the Government was required to obtain a search warrant in order to search and inspect the minivan once it was seized for asset forfeiture purposes, or, as posited by the Government, whether a second inventory search would have been permissible under the Fourth Amendment. As discussed, assuming without deciding that such a warrant was necessary, the Court finds no material misstatements or omissions in the warrant and finds probable cause for the search even if the arguably inaccurate statements are excised from the affidavit.

*Illinois v. Gates*, 462 U.S. 213, 232 (1983). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (internal quotation marks omitted). "To establish probable cause to search, 'two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at' the place to be searched." *United States v. Simmons*, No. 22-cr-158 (LJV), 2023WL 6617739, at *3 (W.D.N.Y. Oct. 11, 2023) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)).

The New Hampshire affidavit begins by briefly explaining that law enforcement had obtained search and seizure warrants for Defendant's home and business as well as an arrest warrant for the Defendant, and that the affidavit in support of those warrants was appended to the New Hampshire affidavit and incorporated by reference. *See* ECF No. 71 at 6–7 ¶¶ 10–11. It then states that Target Vehicle 1 (the minivan) was seized from Defendant's residence and Target Vehicle 2 (the Jeep) from Defendant's business for asset forfeiture purposes because he "had been observed during the course of the investigation utilizing both vehicles to acquire and transport narcotics that he sold to a DEA confidential source . . . as detailed in the Original Affidavit and as set forth below." *Id.* at 7 ¶ 12. The affiant includes that a grand jury in the District of Connecticut had returned an indictment against Defendant in which the minivan was included as forfeitable property—in and of itself a finding of probable cause on the issue of whether the minivan was either an instrumentality of narcotics trafficking or procured with proceeds from the same. *See United States v. Contreras*, 776 F.2d 51, 53–54 (2d Cir. 1985). The

10

affiant avers that Defendant "had been observed operating both vehicles on multiple occasions prior to the execution of those warrants," and detailed two such occasions on December 15, 2022 and January 24, 2023. *Id.* at 8 ¶¶ 14–16. For example, on December 15, 2022, during a controlled purchase, Defendant "indicated that he needed to go get the narcotics and was observed leaving [the business] driving [the minivan]. . . . Approximately 35 minutes later, [Defendant] returned to [the business] driving [the Jeep] and proceeded to sell the CS a quantity of cocaine in exchange for $800." *Id.* at ¶ 15. The affiant concludes that she believed Defendant used the Jeep to transport cocaine on January 24, 2023 "consistent to how he had utilized both [the minivan] and [the Jeep] to acquire cocaine for the CS during the first controlled buy" on December 15, 2022. *Id.* at ¶ 16.

Further to the issue of Defendant's use of vehicles in connection with his narcotics trafficking, the affiant explained that Defendant had told a confidential source on October 20, 2022 that he "was in the business of selling both cocaine and marijuana" and that he knew a discrete "trap maker" in Waterbury and that based upon this statement, the affiant believed that the Defendant had installed traps in several of his vehicles. *Id.*[3] The affiant further averred that law enforcement received information from a source in the community—after Defendant's presentment following his arrest—that the minivan, in fact, had a trap with narcotics inside it that might not have been located at the time of the initial seizure. *Id.* at 9 ¶¶ 17–18.

Defendant argues that the affidavit is misleading insofar as it asserts that Defendant was observed leaving the business driving the minivan on December 15, 2022, and had been observed utilizing both vehicles to acquire and transport narcotics. Defendant relies upon the Original Affidavit, wherein the affiant acknowledged that on December 15, 2022, investigators

---

[3] The affiant provides significant detail about the use of traps by those who traffic in narcotics, where traps might be located, and the various mechanisms used to open them.

observed the minivan leaving the business but that "investigators could not see the driver but believed Acevedo was operating the vehicle." Relatedly, Defendant asserts that this false statement was repeated later in the affidavit. Defendant also argues that the statement in the affidavit that the minivan was used to transport narcotics is also a false statement because the only vehicle possibly used to transport narcotics in either affidavit was the Jeep.

In response, the Government asserts that the statements cited by Defendant are not misleading or inaccurate and are merely reasonable inferences drawn by the affiant from evidence adduced during the investigation as detailed in the earlier affidavit submitted for Magistrate Judge Garcia's review. Alternatively, the Government asserts that even without these allegedly misleading statements, the affidavit contained probable cause to search the minivan. The Court agrees with the Government.

The purportedly false statements, which derive from inconsistencies between the two affidavits, are at best, nuanced versions of the same information. The fact that Magistrate Judge Johnstone had *both* affidavits belies any claim that the subsequent affidavit was intended to or did mislead. The Original Affidavit details that law enforcement had received information in November 2022 that Defendant was selling narcotics from the location of his business and that he had been operating a heavily tinted minivan. On December 15, 2022, the confidential source went to Defendant's business, but no one was present. The confidential source then called Defendant who indicated he would arrive at the business in approximately 30 minutes. Approximately 30 minutes later, the minivan was observed arriving at the business, though the driver could not be identified. Within the hour, the confidential source returned to the business and knocked on the door. Defendant was present at the business and opened the door. A narcotics transaction was negotiated, during which Defendant expressed that he had go retrieve

the cocaine. Defendant told the confidential source to wait nearby. Shortly thereafter, law enforcement observed the minivan exit the business. Again, within the hour, the Jeep arrived back at the business and the confidential source thereafter conducted the controlled purchase with Defendant. While the affiant in the Original Affidavit conceded that they could not "see" Defendant operating the minivan on December 15, 2022, the reasonable inferences from the facts set forth above include that Defendant was driving the minivan when he arrived at the business and again when he left to retrieve the cocaine. The New Hampshire affiant's statement that law enforcement "observed" the Defendant driving the minivan on December 15, 2022, while perhaps inartful, is not misleading.[4] For the same reasons, nor is the averment that Defendant "had been observed during the course of the investigation utilizing [the minivan] and [the Jeep] to acquire and transport narcotics that he sold to a DEA" confidential source misleading or inaccurate. Rather, these are factual assertions supported by the evidence and the reasonable inferences to be drawn therefrom. And it bears repeating that Magistrate Judge Johnstone had *both affidavits,* undermining any conclusion that the statements, even if arguably inconsistent or inaccurate, were made in reckless disregard of the truth.

Finally, even if the relied upon statements could fairly be characterized as inaccurate or misleading, there was probable cause to search the minivan independent of these alleged inaccuracies. The Original Affidavit detailed the use of the minivan in connection with the December 15, 2022 controlled purchase, from which, as discussed above, the reasonable inference could be drawn that Defendant was operating the minivan; law enforcement had information dated back to November 2022 that Defendant was selling narcotics out of his

---

[4] It is also worth noting that the affiant in the New Hampshire affidavit cited paragraphs eighteen through twenty of the Original Affidavit in support of this averment. The cited paragraphs contain the purported inconsistencies on which Defendant relies.

13

business and that he was operating a heavily tinted minivan; Defendant had been seen operating the minivan on multiple occasions prior to the execution of the search warrants in Connecticut; Defendant told the DEA confidential source that he knows a discrete trap-maker in Waterbury; and a source in the community told law enforcement that the minivan, in fact, contained a trap with narcotics inside of it that law enforcement did not locate at the time of the initial seizure. In combination, these statements establish probable cause to search the minivan.

The request for an evidentiary hearing pursuant to *Franks* is therefore denied.[5]

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of June 2024.

                                            */s/ Kari A. Dooley*
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE

---

[5] The Court need not reach the question of the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984) in light of these findings.