UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:23-CR-35 (KAD) |
| | : | |
| v. | : | |
| | : | February 20, 2025 |
| MIGUEL ACEVEDO | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in aid of sentencing and in response to the defendant's sentencing memorandum that was filed on January 17, 2025. As described in the Presentence Report ("PSR"), an unrepentant, recidivist drug trafficker, was again found to be distributing significant quantities of drugs, specifically cocaine, into the community. Despite numerous prior arrests and numerous terms of imprisonment—including a lengthy term of federal incarceration—he has continued on in his criminal conduct, completely undeterred. He is a career drug trafficker, and his activities must be met with meaningful censure. As set forth below, a sentence of 120 months is sufficient but not greater than necessary to accomplish those various goals of sentencing.

**I.    THE OFFENSE AND RELEVANT CONDUCT**

The facts set forth in the Presentence Report regarding the defendant's offense conduct do not appear to be in dispute but are summarized herein with additional detail.

On June 25, 2021, Mr. Acevedo registered a new business with the State of Connecticut called Acevedo Detailing and Car Sales LLC ("Acevedo Detailing") with an address of 231 West Main Street, in Meriden, Connecticut. *See* PSR ¶ 9. Because Acevedo registered the business only three weeks after he had been found in possession of approximately $280,000 in drug proceeds, among other things, within his home residence by Meriden Police Department, investigators

suspected that Mr. Acevedo was attempting to move his primary narcotics trafficking operation to a more secure, second location. *Id.*

Accordingly, on October 20, 2022 investigators used a Drug Enforcement Administration ("DEA") Cooperating Source ("CS") to conduct a cold, unannounced, meet with Mr. Acevedo at Acevedo Detailing that was audio and video recorded. *See* PSR ¶ 10. In sum and substance, Mr. Acevedo stated that he buys, flips, washes, and sells cars. Mr. Acevedo also stated that he does full vehicle detailing both inside and outside and that he works under the radar. Mr. Acevedo further stated that he is also involved in "pasto" (marijuana) and that "they" recently started working in that because he was mainly and normally involved with "perico" (cocaine). *Id.* During the conversation, Mr. Acevedo also stated he knows a "trap-maker" that is located in Waterbury, Connecticut and is a Dominican Republic national that works discreetly. *Id.*

Thereafter, the DEA CS made two controlled purchases of cocaine from Acevedo, both of which occurred at Acevedo Detailing's business location. *See* PSR ¶¶ 11-19. During the first controlled purchase on December 15, 2022, the CS paid Acevedo $800 for approximately 50 grams of cocaine. *See* PSR ¶ 16. During the purchase, Acevedo told the CS that he could sell the CS a kilogram of cocaine for $21,500 and that he could get up to 10 or 15 kilograms of cocaine at a time. *Id.* During the second controlled purchase on January 24, 2023, which also occurred at Acevedo Detailing, the CS purchased approximately three ounces of cocaine. The cocaine sold to the CS had distinct lines and edges, indicating that it had been cut directly off a kilogram block of cocaine. *See* PSR ¶ 18. Acevedo and the CS also discussed the potential purchase of several kilograms by the CS at a later date, and in the days following the controlled purchase, had a second discussion by phone about the CS purchasing five kilograms of cocaine on February 8, 2023 from Acevedo at his shop. *See* PSR ¶¶ 18-19.

On February 14, 2023, Acevedo was arrested at his home pursuant to a federal arrest warrant, and simultaneously, federal search warrants were executed at both Acevedo's home and Acevedo Detailing. During the search of his residence, Acevedo indicated that he did not have any drugs at the residence but did have about 50 grams of cocaine at his shop, Acevedo Detailing. *See* PSR ¶ 21. During the search of Acevedo Detailing, investigators located—consistent with Acevedo's statement—approximately 40 grams of cocaine from the desk of the garage office, along with a vacuum heat sealer, ziplock sealer bags, heat sealers and rubber bands elsewhere in the garage. *See* PSR ¶ 27.

In connection with the search at Acevedo's residence, investigators also seized a blue Toyota Sienna Minivan that had been observed during controlled purchases and investigators believed Acevedo had used to transport drug proceeds and/or narcotics to those controlled purchases. The minivan was initially seized as forfeitable property and transported by the U.S. Marshal's Service to New Hampshire. After receiving additional information about the minivan, DEA investigators applied for a warrant to search the vehicle, wherein they located a hidden compartment ("trap") in the rear bumper that contained approximately six kilograms of cocaine along with a loaded firearm. *See* PSR ¶ 31.

Acevedo's cell phone was also seized at the time of his arrest and a search warrant was issued for its contents. Within the phone, investigators located several images of what appear to be kilograms of cocaine, consistent with the blocks of cocaine located in the trap of the blue minivan.

II.    THE GUIDELINES CALCULATION

With respect to the applicable Guidelines calculation, both the U.S. Probation Office and the parties agree that Counts One and Three are grouped under U.S.S.G. § 3D1.2 and that based

on the quantity of controlled substances involved, specifically 111.68 grams of cocaine base and 6,026.3 grams of powder cocaine, the applicable base offense level is 30. *See* PSR ¶ 42. Both the U.S. Probation Office and the parties also agree that two levels are added under U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon, specifically a firearm was possessed.

The U.S. Probation Office and the Government further believe that two additional levels should be added because Mr. Acevedo maintained a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). *See* PSR ¶ 44. As set forth in the factual statement of the PSR, Acevedo sold cocaine to a DEA CS on two occasions while inside Acevedo Detailing, and at the time of his arrest, an additional quantity of cocaine was located in a desk at Acevedo Detailing, along with packaging materials for kilograms, including a vacuum sealer and plastic bags. Indeed, Acevedo had only opened Acevedo Detailing following the seizure of drug proceeds from his residence a few months prior, and at the time of the instant arrest, admitted to investigators that he did not keep any drugs at his residence, rather they were located at his shop. For all of these reasons, the Government submits that this additional two-level enhancement applies and the resulting adjusted offense level is 34. *See* PSR ¶ 48. With three levels subtracted for acceptance of responsibility, the resulting total offense level is 31. *See* PSR ¶¶ 50-51, 53. The defendant does not believe the additional two-level enhancement applies and the resulting total offense level is 29.

Both the U.S. Probation Office and the parties agree that Mr. Acevedo falls within Criminal History Category III. *See* PSR ¶ 66. As a result, the Government and the U.S. Probation Office calculate an offense level 31 and a CHC III to result in a Guidelines range of imprisonment of 135 to 168 months. *See* PSR ¶ 126. The defendant calculates an offense level 29 and a CHC III to result in a Guidelines range of imprisonment of 108 to 135 months. Under either calculation, the

defendant is also subject to a Guidelines term of supervised release of one to five years under U.S.S.G. § 5D1.2.

### III. THE LAW

After the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

### IV. DISCUSSION

#### A. *Nature and Circumstances of the Offense*

In this case, Acevedo was involved—yet again—in the trafficking of large, redistributable quantities of narcotics, specifically six kilograms of cocaine. And he committed this offense, as set forth in further detail below, despite numerous prior drug convictions. Although the crime of

possessing with intent to distribute narcotics may not itself result in harm to any particular victim, this was not a victimless offense. As the Court is well aware, dangerous narcotics like cocaine have had an incredibly destructive impact on far too many communities, families, and citizens in Connecticut. Drug addiction, and in particular, drug overdoses, have reached critical proportions within our society. Acevedo's activities undoubtedly reached more end users that the average street dealer. His sentence should reflect this distinction. Moreover, the dangerous nature of his drug trafficking is compounded when he commits those offenses while in possession of a firearm. For these reasons, the nature and circumstances of the offense and seriousness of the offense weigh heavily in favor of a significant sentence.

### B. *History and Characteristics*

Not only did Acevedo commit a serious offense, but he is also a serious offender, having started selling cocaine at 19 years old, and continuing to work as a cocaine dealer for the better part of his life thereafter. *See* PSR ¶¶ 58, 61. Specifically, Acevedo has accrued six prior state felony convictions, including four for narcotics possession and sale, one conviction for carrying a dangerous weapon, and one conviction for third-degree burglary. In addition, in 2008, Acevedo was convicted federally with trafficking between 150 and 500 grams of cocaine base for which he was sentenced to 60 months of imprisonment. But while on federal supervised release after serving that sentence, Acevedo was arrested again for possessing with intent to distribute cocaine. *See* PSR ¶ 64. Indeed, at the time of his arrest in the instant case, Acevedo all but conceded that he was trafficking cocaine, yet again, when he became upset during the arrest and told investigators that hew as just trying to feed his children and that instead of focusing on him and his drug trafficking, the police should focus on the murderers. In other words, in the Government's opinion, despite all of the prior arrests, convictions, and terms of imprisonment in between those arrests

and convictions, Acevedo refuses to see his conduct as problematic in any way. Of course, he should be able to have the opportunity to feed his family, but he cannot do so by selling cocaine.

Moreover, as the PSR indicates, Acevedo has been able to succeed at legal employment when he was meaningfully engaging with the U.S. Probation Office and his treatment providers, but it is alarming that even after the significant time and resources that Acevedo and others put into his rehabilitation, he refuses to leave his drug life behind. Indeed, based on the representations by Acevedo's prior defense counsel in support of a motion for early termination of supervised release claiming that he was on track to being a contributing member of society, Judge Arterton granted the motion, finding that Acevedo's "positive lifestyle and productivity over the last three years implies little risk of further criminal activity on his part going forward." *See United States v. Acevedo*, No. 3:06-CR-268 (JBA), Dkt. No. 1851, Filed Dec. 2, 2020. Unfortunately, Acevedo has since engaged in conduct more egregious than all of his previous offenses—possessing over six kilograms of cocaine (which dwarf the half kilogram that served as the basis of his first federal offense) while also possessing a loaded firearm with that cocaine, and having hundreds of thousands of dollars in drug proceeds seized from him in the time period since that release. Simply put, nothing has deterred Acevedo, and nothing has changed. The sentence imposed needs to send a very clear message that he must stop.

    **C.**    *Deterrence, Protection of the Public, Promote Respect for the Law*

The sentence imposed should also provide adequate deterrence, protect the public and promote respect for the law. As set forth in the PSR, none of Acevedo's prior convictions or terms of imprisonment have deterred him from committing an additional, and more serious, drug trafficking offense. Protection of the public is paramount and will only occur once Acevedo truly understands that he cannot engage in drug trafficking. A sentence of 120 months as contemplated

by the plea agreement will send the message that anything other than compliance with the law will not be tolerated.

There is a need for general deterrence here to deter others from engaging in this type of criminal conduct. Although there were no direct victims in this case, obviously, distributing this quantity of narcotics into the community put many lives at risk and the sentence here may help deter others from engaging in such criminal conduct.

V.   **CONCLUSION**

For the reasons stated herein and on the full record of this case and an assessment of the factors outlined in 18 U.S.C. § 3553(a), the Government respectfully submits that in light of the seriousness of the offense, the defendant's history and characteristics, and the need of the sentence to provide just punishment, respect for the law and to deter the defendant and others from engaging in criminal activity, the sentence which is sufficient by not greater than necessary to accomplish those various sentencing goals is a term of imprisonment of 120 months.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

*/s/ Lauren C. Clark*
LAUREN C. CLARK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv09365
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
Tel: (203) 696-3000